## Seigworth *versus* Leffel *et al.*

1. Defendant bought from plaintiff water-wheels for a mill under a warranty, that they would do specified work or the defendant might rescind the contract, and plaintiff would refund the money paid, pay all expenses and damages. The defendant alleged the warranty had been broken; he did not rescind the contract, but continued to use the wheels. *Held*, that the measure of damages was the difference between the value of the wheels as warranted and the real value or market price.

2. In such case the *contract* price does not enter into the question as a rule of measurement. ·

3. Where there was no other evidence of the real value of the article than the contract price, that is presumed to be the real value.

[Seigworth v. Leffel.]

October 23d 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Clarion county:* No. 27, of October and November Term 1874.

This was an action of assumpsit, brought March 7th 1872, by Thomas Leffel, Henry Barnett and Samuel McPherson, partners, &c., against George Seigworth, who survived John G. Seigworth, to recover the price of three "Leffel's Improved Turbine Wheels." The pleas were: "Non assumpsit and payment with leave, &c." The defence was that the wheels had been warranted to do a certain amount of work, and that upon a test they did not come up to the warranty. The defendant had made a payment at the time of the contract, and had also been at some expense in putting them in; he refused to pay the remainder of the contract price, and claimed damages also for the expense which he had incurred.

McPherson, one of the plaintiffs, testified that in June 1869, he sold to the Seigworths three turbine wheels, at $260 each, and guarantied that they would "grind under 24 feet head as much as an overshot using about the same amount of water;" $350 were paid when the wheels were sold; the balance was to be paid as soon as the wheels were started; the wheels were furnished about May 1st 1870, and by agreement with Seigworth, another wheel, at $300, was substituted in place of one of those sent. After the wheels were put in, they were tested, on the 13th of May, in the presence of the defendant, George Seigworth, and others, and "went off to satisfaction of all present." They postponed further test until the next morning, that John Seigworth might be present; the next morning the water was almost all gone, there not being enough to make the stream a test, and John Seigworth condemned the wheel at once without making any test. Plaintiff also testified that the streams did not afford the amount of water which Seigworth had said when the contract was made, that they would; that when the test was made on 13th of May, the wheels did all that he had agreed they should.

There was other evidence corroborating McPherson's testimony; also that Seigworth interfered with the workmen in carrying out McPherson's directions.

The defendant testified that McPherson guarantied that his wheels would take less water than a 24-feet overshot, give better power and more regular motion; if they did not, he was to take them away and pay all expenses and damages, the number of wheels was left to McPherson's option; Jaynes put up the wheels; plaintiffs sent him; the Seigworths were to pay him; they did pay him.

The defendant proposed to prove "that they paid Gabriel Jaynes $313 for putting these wheels in the mill. This for the purpose, in connection with other evidence, of showing damages sustained by

[Seigworth *v.* Leffel.]

the defendants in consequence of the wheels not performing as guaranteed by plaintiffs."

Objected to by plaintiffs' counsel, and testimony excluded, the court saying: "We do not think the evidence proper at this stage of the case." A bill of exceptions was sealed.

The defendant further testified that the wheel worked well, but took too much water; that another mill with less water than their mill did more work; that after the wheels were put in, McPherson said the head was the cause of the failure, and he would put in the other wheel at his own expense; it still did not do, and John Seigworth said he would not pay another cent; that McPherson should take the wheels, and pay all the damages.

On cross-examination he testified that he had taken one wheel out and put it into a saw-mill, and it ran very well when there was water; that they were still running the grist-mill with the two wheels, and when there was plenty of water they did "splendidly." The wheels did everything they had been represented to do, except that they took too much water.

There was other evidence of somewhat the same character as the testimony of the defendant; but there was no evidence of notice from the defendants of rescission.

Both parties submitted points, which, with their answers, are as follows:—

Plaintiffs' points: 2. If John G. Seigworth condemned said wheels without a fair and honest test, according to the terms of the contract between the parties, then plaintiffs are entitled to recover, in the absence of clear and satisfactory evidence of a breach of the contract on part of plaintiff.

3. Even if there was a contract of guaranty and a breach thereof by plaintiffs, unless the defendants gave the plaintiff notice to remove the wheels, they are liable for the real value of the wheels, if they continued to use them.

Answer: "We answer the second and third points of the plaintiffs in the affirmative, but qualify them as in general charge."

Defendant's points: 1. If the plaintiffs guarantied their wheels to perform as well, or better, than a 24-feet overshot wheel and they did not, the plaintiffs cannot recover.

Answer: "The first point we answer in the affirmative, but qualify it by adding to it, 'more than the market value;' also by general charge."

2. If the jury find the facts stated in the last point, the defendants may defalcate all the damages sustained by the defendants from the plaintiffs' claim.

Answer: "The second point we answer in the affirmative, with the qualifications contained in the general charge."

3. That if the jury find that the defendant has sustained more

[Seigworth v. Leffel.]

damage than the amount of the plaintiffs' claim, the jury may find for the defendant the difference.

Answer: "The third point we answer in the negative."

The court (Jenks, P. J.) charged:—

"If the defendants purchased from the plaintiffs the wheels in controversy upon a guaranty that they had the capability stated in the testimony, and they had such capability, plaintiffs are entitled to the contract price, with interest upon so much of it as remains unpaid from the time it was payable until this date. If the wheels had not the capability guarantied, and notwithstanding the defendants retained and continued to use them, they would be liable for their real market value. If the difference between their real market value and the contract price was equal to the balance claimed, your verdict ought to be in favor of the defendants, but you cannot certify a balance in their favor. If the wheels had not the capability guarantied, and the defendants retained them, and the real market value was greater than the amount paid on them, for such amount your verdict ought to be in favor of the plaintiffs, with interest from the time the money was to have been paid."

The jury found for the plaintiff $577.39.

The defendant took a writ of error; he assigned for error:—

1. Excluding the evidence of Seigworth as to the money paid by defendant for putting in the wheels.

2, 3. The answers to the plaintiff's 2d and 3d points.

4, 5. The answers to the defendant's 1st and 2d points.

6. The answer to the defendant's 3d point.

*J. Boggs* and *J. Campbell*, for plaintiff in error.—Under an entire contract the plaintiff must prove performance or readiness to perform, before he can recover the consideration: Hall v. Rupley, 10 Barr 231; Shaw v. Turnpike Co., 3 Penna. R. 445. The jury could in this case have certified a balance: Calvin v. McClure, 17 S. & R. 385; Balsbaugh v. Frazer, 7 Harris 95.

*G. A. Jenks* and *W. L. Corbett* (with whom was *T. S. Wilson*), for defendants in error.

Mr. Justice SHARSWOOD delivered the opinion of the court, January 4th 1875.

This was an action instituted in the court below to recover the contract price of three turbine wheels, known as "Leffel's Improved Turbine Wheel." The defence set up was that the plaintiffs had warranted the wheels to do more work than a 24-feet overshot, and a breach of the warranty. Of this some evidence was given. It was also testified by witnesses on the part of the de-

[Seigworth *v.* Leffel.]

fendants, that they had reserved the right to rescind the contract in case the warranty was broken—in the words of the witnesses, that if they did not perform as warranted, the plaintiffs would take the wheels back and refund the money, and pay all expenses and damages. There was no evidence, however, that the right of rescission had ever been exercised. The defendants might have taken the wheels out or given notice to the plaintiffs to take them away. So far from this, it fully appeared that the defendants had continued to use the wheels without giving any notice of rescission. Under these circumstances, all that the defendants could claim was to set off against the plaintiffs' demand the damages recoverable on breach of the warranty. In such a case the measure of damages is well settled to be the difference between the value of the articles as warranted and the real value or market price: Sedgwick on Damages 290; Borrekins *v.* Bevan, 3 Rawle 44; Stetson *v.* Croskey, 2 P. F. Smith 230. It was settled in Cothers *v.* Keever, 4 Barr 168, that the contract price does not enter into the question as a rule of measurement. In that case, which was an action to recover damages on the warranty of a horse, it was held that the true measure was the difference between the value of the horse, if he had been sound as warranted, and his value in the diseased state. The reason is a conclusive one: if the vendee made a bad bargain, he is not to be reimbursed what he lost by his simplicity as damages for a breach of warranty.

Here, for example, the price claimed for these improved turbine wheels may have been more than their real value, and the rule as laid down by the learned judge below would have been erroneous, had there been any evidence in the cause of their real value as warranted other than the contract price. In the absence of any such evidence, as against the plaintiffs, the contract price must primâ facie be presumed to be the real value, and it is a rule to which the defendants in this case have no right to object.

In regard to the sixth error assigned, by which the jury were instructed that they could not certify a balance in favor of the defendants, as the jury found their verdict for the plaintiffs, no injury was done to the defendants, even if it was erroneous.

Judgment affirmed.