## American Home Savings Bank Company *v.* Guardian Trust Company, Appellant.

*Contract—Parol agreement—Affidavit of defense.*

A written order for goods cannot be varied by parol representations alleged to have been made by one of the parties prior to the execution of the written agreement. Even if the parol agreement were contemporaneous, it is inadmissible, unless there is proof that it was omitted from the written agreement by fraud, accident or mistake.

*Contract—Sale—Warranty.*

Where a known, described and definite article is supplied, there is no warranty that it shall answer the particular purpose intended by the buyer.

If a thing be ordered by the manufacturer for a special purpose, and it be supplied and sold for that purpose, there is an implied warranty that it is fit for that purpose. But this principle is limited to cases where a thing is ordered for a special purpose, and must not be applied to those where a special thing is ordered, although this be intended for a special purpose.

Argued Oct. 27, 1904. Appeal, No. 133, Oct. T., 1904, by defendant, from order of C. P. No. 3, Allegheny Co., May T., 1904, No. 446, making absolute rule for judgment for want of a sufficient affidavit of defense in case of American Home Savings Bank Company v. Guardian Trust Company of Pittsburg. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Assumpsit for goods sold and delivered.

Rule for judgment for want of a sufficient affidavit of defense.

The goods were sold under the following written order:

It is understood that neither party is held responsible for anything further than that which is written on this contract. This contract is not subject to countermand.

"OFFICES PENNSYLVANIA BUILDING,

"PHILADELPHIA, January 9, 1904.

"AMERICAN HOME SAVINGS BANK COMPANY,

"Factory, Woodbury, N. J.

"DEAR SIRS:—You will please ship at your earliest convenience Two Thousand Clock Home Savings Banks: finish, Gun metal finish, numbered to follow, for which we agree to pay as before, each net cash, F. O. B., Philadelphia, Pa.

"The above order to be shipped on or before sixty days from date, five hundred to be shipped next week.

"Mark the Banks: as before.

"Yours respectfully,

"GUARDIAN TRUST CO. OF PITTSBURG,

"GEO. L. STEPHENSON,

Treasurer."

Defendant filed the following affidavit of defense:

That prior to October 30, 1903, the plaintiff was a manufacturer or dealer in the sale of a device known as "Home Savings Banks," intended to supply domestic means of accumulating savings for the purpose of deposit in banking institutions; that one W. Scott Smith, agent of the plaintiff company, entered into a contract with the defendant company, prior to October 30, 1903, whereby he agreed in the event that the defendant company should make purchases of same, that the sales of said device should be limited to three banking institutions within the radius of twelve miles from city of Pittsburg, namely, the defendant company, the Home Trust Company, and the Land Title & Trust Company; that the devices should be in perfect order, so that money deposited therein could not be extracted therefrom, except by the bank distributing the same; that the plaintiff would provide three competent men to introduce the said devices for the aid and benefit of the defendant company in procuring prospective customers and depositors with the said bank of savings so accumulated in said

devices; and that the said defendant would be enabled to rent the said boxes to customers and depositors at a rental equal to the cost of the said devices in the city of Pittsburg, estimated to be $2.00.

Relying upon the said representations, the defendant did enter into a contract prior to October 30, 1903, for 500 of said clock banks, and pursuant to said contract gave an order substantially as set out in plaintiff's affidavit of claim therefor, of which they received the whole number at or about the times mentioned in the said affidavit of claim, but affiant says that while the said company did send three operators, in accordance with the said contract, they almost immediately withdrew two who were expert and left a comparatively inexperienced person in charge, and he remained but a short time.

Affiant further says that the greater number of said 500 clocks were distributed among customers, but that they were so imperfect in this, that they would not preserve moneys deposited therein from removal by unauthorized persons, and in many instances would not permit of the entry of moneys by reason of faulty construction and were returned to the defendant, and the defendant lost a large number of those who returned the same as customers.

That the plaintiff company was immediately and repeatedly advised of the faulty construction of these devices, and promised to replace the same, and did in point of fact replace about fifty, but the same were in no sense free from the defects already complained of.

Affiant further saith that before the discovery of these defects and in pursuance of the said verbal contract, the said defendant did order 2,000 additional clock savings banks with gun metal finish, upon a rush order for 500, and the remainder of said order to be shipped only upon the order, from time to time, of the defendant bank. Affiant says that they did receive the 500 of the rush order, but that many of them were deficient in construction as aforesaid, and also to such an extent that standard silver dollars could not be forced through the slot in the said banks. That complaints were made, but notwithstanding the said plaintiff continued to ship against the remonstrance of the defendant, and in violation of the last mentioned order, until a total of 1,400 banks had been shipped

to this defendant, and delivered by express at the defendant's banking house.

Affiant further says that the plaintiff company, in violation of its contract, has sold to a pawnbroker of the city of Pittsburg numbers of these devices, to be used for the purpose of selling rings and jewelry and otherwise, and thereby depreciating the value of the same for defendant's purpose; that defendant employed agents to install these devices among prospective customers, and has paid them a commission of forty cents. That the failure of these devices to work properly has caused great loss to the company; that they are unable to successfully lease these defective banks by reason of the defects in construction; that they have lost customers and depositors to whom they have been rented, who returned them and withdrew their accounts, and that the said bank has lost the amount of money paid in commissions to its agents.

That the credit allowed by the plaintiff to the defendant company is applicable to the first order, and was paid by the defendant on account of the first order in said statement of claim mentioned, and is not a general credit on the entire account.

Affiant says that the damage it has sustained by the breach of contract exceeds in amount the full demand of the plaintiff.

*Error assigned* was the order of the court.

*S. Schoyer, Jr.*, with him *John P. Hunter*, for appellant.—The parol agreements set up in the affidavit of defense were admissible in evidence: Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35; Coal & Iron Co. v. Willing, 180 Pa. 165; Ferguson v. Rafferty, 128 Pa. 337.

The facts set up in the affidavit of defense constitute a good defense to the plaintiff's claim: Haines v. Young, 13 Pa. Superior Ct. 303; McCormick Harvesting Machine Co. v. Nicholson, 17 Pa. Superior Ct. 188.

*Charles P. Orr*, of *Lazear & Orr*, for appellee.—The parol agreement set up in the affidavit of defense was not admissible in evidence: Rearick's Executors v. Rearick, 15 Pa. 66;

Wodock v. Robinson, 148 Pa. 503 ; Hatfield v. Thomas Iron Co., 208 Pa. 478.

Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement: Martin v. Berens, 67 Pa. 459 ; Clarke v. Allen, 132 Pa. 40 ; Hunter v. McHose, 100 Pa. 38 ; Jackson v. Payne, 114 Pa. 67 ; Wodock v. Robinson, 148 Pa. 503 ; Ziegler v. McFarland, 147 Pa. 607.

Where a buyer orders a specified article from the manufacturers thereof by its trade name, there is no implied warranty that the article will serve the purpose intended by the buyer: Jarecki Mfg. Co. v. Kerr, 165 Pa. 529 ; Haines v. Young, 13 Pa. Superior Ct. 303 ; Seitz v. Brewers' Refrigerating Machine Co., 141 U. S. 510 (12 Sup. Ct. Repr. 46).

A purchaser takes the risk of the quality of an article, unless there be fraud or warranty. Mere representation is not warranty: Whitaker v. Eastwick, 75 Pa. 229.

OPINION BY MR. JUSTICE POTTER, December 31, 1904 :

This was an action of assumpsit in which judgment was entered for want of a sufficient affidavit of defense. The appellant contends that this was error, because it had set up in the affidavit a parol contract modifying the written order upon which the goods were furnished. But this contract as alleged by the defendant does not appear to have been contemporaneous with the written order, and for that reason the learned court below was justified in ruling that it could not be permitted to vary or contradict the latter. The first written order was given to the plaintiff by the defendant, under date October 30, 1903. The affidavit of defense alleges that prior to this time, but without stating when or where, certain agreements were made, which do not appear in the written order. So long ago as Rearick v. Rearick, 15 Pa. 66, Justice BELL said (p. 72) : "It is recognized as a settled maxim, that oral evidence of an agreement or understanding between parties to a deed or other written instrument, entertained before its execution, shall not be heard to vary or materially affect it. Accordingly, the settled rule is that, when a contract has been reduced to writing, it is understood as expressing the final conclusions of the

contracting parties, and fully accepted as merging all prior negotiations and understandings, whether agreeing or (in) consistent with it."

In Hatfield v. Thomas Iron Co., 208 Pa. 478, the facts are quite like those of the present case. There the written contract was a sale memorandum sent by the plaintiffs to defendants and accepted by them. The language of the court there used (p. 484) is appropriate here. We said : " The court below very properly held that the sales memorandum was the contract between the parties by which the plaintiffs agreed to sell and deliver the coke to the defendant company, and that the parol testimony offered by the defendant was not admissible to contradict the written agreement. The defendant did not propose to show a parol contemporaneous agreement inducing the execution of the written contract between the parties, nor that the execution of the agreement was procured by fraud, accident or mistake. The offer was simply to contradict the written agreement by showing by parol evidence certain negotiations prior to June 10, 1899, the date of the sales memorandum," etc.

In the case now before us, the first order given by the defendant was for 500 clock banks, and 400 of these were shipped prior to January 9, 1904, at which date the defendant gave a second order for 2,000 more of the clock banks. It directed that they be shipped at the earliest convenience of the plaintiff, 500 of them the following week, and all within sixty days from date. It appears that in so far at least as the first order was concerned, all of the banks were delivered and accepted, and payment made upon account thereof. An inspection would certainly have disclosed the defects, had they existed, of which complaint is now made. The second order was for a known, described and definite article. And where such an article is supplied, there is not under the authorities any warranty that it shall answer the particular purpose intended by the buyer. See Jarecki Mfg. Co. v. Kerr, 165 Pa. 529 ; Seitz v. Refrigerating Machine Co., 141 U. S. 510. This latter case has been approved and followed in Pullman Palace Car v. Street Ry. Co., 157 U. S. 94.

It is true that if a thing be ordered of the manufacturer for a special purpose, and it be supplied and sold for that purpose,

there is an implied warranty that it is fit for that purpose. But this principle is limited to cases where a thing is ordered for a special purpose, and must not be applied to those where a special thing is ordered, although this be intended for a special purpose: Port Carbon Iron Co. v. Groves, 68 Pa. 149. We do not see in the allegations of the affidavit of defense, sufficient to support the theory, that the representations made by the agent of the plaintiff amounted to a warranty. But in any event the defendant has not rescinded the contract. It received and has retained and used the clock banks, so that if entitled to damages, the measure would be the difference between the value as warranted, and the real value of the goods as delivered: Himes v. Kiehl, 154 Pa. 190; Seigworth v. Leffel, 76 Pa. 476.

But upon the broad ground, that it is sought to vary a written contract by parol representations previously made by one of the parties, we think the affidavit was insufficient to prevent judgment. As was said by our Brother Brown, in Krueger v. Nichola, 205 Pa. 38: " To contradict or vary the terms of a written contract by an oral, contemporaneous agreement between the parties, there must be allegation as well as proof, not only of it, but of its omission through fraud, accident or mistake, from the writing. This has been ruled so frequently that reference is hardly needed to one or two of the many authorities on the subject;" citing Wodock v. Robinson, 148 Pa. 503 and Hunter v. McHose, 100 Pa. 38.

The affidavit of defense contains no allegation that by means of fraud or mistake, the real agreement of the parties was not expressed in the written orders for the goods.

The assignments of error are overruled, and the judgment is affirmed.