### Hartford Battery Sales Corporation, Appellant, v. Price.

166

Argued March 13, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Samuel H. Borofsky*, with him *Edmund W. Kirby* of *Morris & Kirby*, for appellant.

*Edward I. Weisberg*, for appellee.

OPINION BY PARKER, J., October 2, 1935:

This action arose from dealings between the parties wherein the plaintiff, a manufacturer of storage batteries, sought to secure from the defendant, a manufacturer of machinery, a pasting machine for use by plaintiff in one of its manufacturing processes. A machine was leased by defendant to plaintiff and installed

in its plant, when plaintiff, after various tests, alleged that it was not fit for the special purpose for which it was purchased and offered to return the machine. The defendant having refused to accept return of the machine, plaintiff instituted this suit to recover the consideration theretofore paid for the use of the machine and damages arising from an attempt to use it, and defendant sued plaintiff to recover additional compensation by way of royalties. The two suits were consolidated and the case was tried on plaintiff's statement of claim and defendant's counter claim. A jury rendered a verdict for the plaintiff and subsequently the court en banc entered judgment n. o. v. for the defendant for royalties then due, and the plaintiff has appealed to this court.

The plaintiff, the Hartford Battery Sales Corporation, was engaged in the business of manufacturing storage batteries for automobiles, and it was part of its manufacturing process to impregnate the grids or plates with a "mud or mix." The defendant, William F. Price, was the manufacturer of a machine known as a plate pasting machine intended to apply such mixture to the grids or plates. It appears from the testimony that, in the latter part of the year 1930, an officer of the plaintiff corporation contacted the defendant, visited the plant of the defendant and saw a pasting machine made by him in operation; and that the defendant inspected the process of manufacture used by the plaintiff. The agent of the plaintiff corporation testified as follows: "I told Mr. Price that I was interested in a pasting machine which would give us better production than we were getting from the machine we were using, that we used a very stiff, hard paste, and that if he could build a machine which would use the same kind of mud that we were using with our method of manufacture, that we might be interested in having him build us a machine. Q. And what did he say to that?

168

A. He said he could build a machine which would use our mud in our factory with our production method."

A considerable amount of correspondence passed between the parties and, on December 3, 1930, plaintiff wrote to the defendant in part as follows: "You may take this letter as authority to proceed at once with the construction of the machine for us." On December 10, 1930, the defendant wrote the plaintiff in part as follows: "Regarding your pasting machine, we have proceeded with this. At the moment I cannot give you the approximate date on which it will be finished, but will be in a position to do so just as soon as you send samples of your grid. With these on hand the machine shop can determine the exact length of time necessary to complete the machine and so advise you. I will have the necessary agreement drawn up and forwarded you early next week." On January 26, 1931, defendant advised plaintiff that the machine was ready for delivery and there was forwarded to plaintiff for execution a form of lease which was executed on February 2, 1931. The contract leased to the plaintiff "one Price Battery Plate Pasting Machine" and contained a guarantee that the machine was free from faults due to defective materials and workmanship, and defendant agreed to supply new parts in place of any which might fail or break or in any way prevent the operation of the machine due to defective materials or workmanship. The lease provided for the payment of $2,000 at about the time of delivery and a minimum royalty of one hundred dollars a month and stipulated that upon the expiration of a certain patent under which the machine was manufactured it should, upon the further payment of the sum of one dollar, be the property of the plaintiff. After the machine was installed and tested, it was demonstrated and, in fact, admitted by defendant's witnesses that the machine would not operate upon the "mud or mix" used by plaintiff.

The plaintiff first claimed under a parol contract whereby the defendant undertook to construct a pasting machine employing the defendant's patent; that the defendant warranted that the machine would operate with the "mud or mix" employed by the plaintiff in its manufacturing process; and that the written agreement set forth in the declaration was but a part of the entire parol contract describing the terms upon which the machine would be paid for and used. The court below, in disposing of the motion for judgment n. o. v., relied upon the case of Gianni v. Russel & Co., Inc., 281 Pa. 320, 126 A. 791, and held that as there was no allegation of fraud, accident, or mistake, all preliminary negotiations, conversations, and verbal agreements were merged in and superseded by the subsequent written contract, and that such writing constituted the sole contract between the parties.

In answer to this position, the plaintiff claims that even though this be a correct statement of the law as applied to an express warranty and the written lease was the sole contract between the parties, which it does not concede, yet nevertheless it was alleged in the pleadings and shown by the proofs that the machine was ordered for a special purpose known to defendant and that by law an implied warranty arose that the machine would be fit for the express purpose for which the plaintiff wished to employ it; that is, to apply to the grids or plates the type of "mud or mix," used by it in its manufacturing process.

We are of the opinion that there is merit in the contention of the appellant that the question of implied warranty was in the case under the pleadings and proofs and should have been given consideration, and that both parties should have been given an opportunity to develop all material facts bearing upon this question when it would have been for the jury or the court to determine, as the facts warranted, whether there was

an implied warranty. In Port Carbon Iron Co. v. Groves, 68 Pa. 149, 151, the general principle involved is, quoting Parsons on Contracts, thus stated: "If a thing be ordered of the manufacturer for a special purpose, and it be supplied and sold for that purpose, there is an implied warranty that it is fit for that purpose. This principle has been carried very far. It must, however, be limited to cases where a thing is ordered for a special purpose, and not applied to those where a special thing is ordered, although this be intended for a special purpose."

By Section 15 of the Uniform Sales Act of 1915 (69 PS 124), it is provided: "There is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: First. Where a buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. Second. Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality. Third. If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed. Fourth. In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

The principle is more fully elaborated in II Williston on Contracts (§§989, 990) as follows: "The warranty of merchantability is not the only warranty that may be implied on the sale of goods. Where the buyer buys

goods for a particular purpose a warranty is sometimes implied that the goods shall be fit for that purpose...... The test here, as elsewhere, is whether the buyer justifiably relied upon the seller's judgment or whether relying on his own he ordered or bought what is frequently called 'a known, described, and definite article.' ...... Even though inspection would not reveal the defect in the goods it is possible for the buyer to select them, relying upon his own judgment, and if he does this the seller, at least, in the absence of guilty knowledge, will not be liable on an implied warranty. Inspection by the buyer is always a fact of importance in considering whether in fact he exercised his own judgment or relied on that of the seller. If the seller is not informed of the buyer's purpose, this also shows that there can be no warranty of fitness for that purpose. If the buyer either enters into an executory contract for the purchase of goods exactly described, or makes an executed purchase of such goods, while he may be able to assert an obligation on the part of the seller to furnish merchantable goods of that description, unless the description itself precludes merchantability, he cannot regard the seller, even though the seller be the manufacturer of the goods, as warranting that they are fit for any more special purpose than that which merchantable goods of the agreed description necessarily fulfill." When a purchaser has exactly defined what he wants he cannot be said to have relied upon the judgment of the seller.

It has been suggested that this is a lease and not a sale, although the written contract provided for the purchase of the property for the sum of one dollar upon the expiration of the patent. However, what we have said with reference to sales applies with equal force, if not with stronger reason, to the case of a lease of goods for a particular purpose: Crown Printing Co. v. Chas. Beck Co., 73 Pa. Superior Ct. 419, 424. That case bears

a close resemblance to the case we are considering, for it was a lease of goods intended for a particular purpose and the chattel there was a printing press generally known as a Toledo Webb Press. Also, see Leggoe & Co. v. Mayer, 2 Pa. Superior Ct. 529, and Amer. Home Savings Bank Co. v. Guardian Trust Co., 210 Pa. 320, 59 A. 1108.

It is also suggested that the written agreement here contains a warranty against defects in material and workmanship and that this precludes an implication of a warranty of fitness for a particular purpose. The contract which we are construing is not only a lease, but provides for the ultimate transfer of the title to the machine to the lessee on the payment of a nominal consideration. For reasons heretofore given, we have no doubt that the same principle should be applied to the construction of this contract that would be applied to one of a sale of personal property. There is some authority, in other states, in the case of sales for the principle contended for by the appellee. We think the rule applicable to sales in this respect is correctly stated in Williston on Contracts (§993) as follows: "If express warranties in a contract are in their nature inconsistent with the warranties which would have been implied had none been expressed, it would indeed be violating the intention of the parties to imply warranties, but the principle should extend no further. An express warranty is generally exacted for the protection of the buyer, not to limit the liability of the seller. The fact that a seller expressly warrants a machine to be made of the best steel ought not to exclude an implied warranty that the machine is properly manufactured and will do the work such machines are designed to do, if such warranties would otherwise be implied. Excellent authority supports this view." In any event, section 15 of the Sales Act provides that "an express warranty or condition does not negative a warranty or con-

dition implied under this [that] act unless inconsistent therewith." With equal reason we hold that in the case of a lease, such as we are here construing, where there are express warranties in the contract, if they are not inconsistent with the warranties which would have been implied had none been expressed, the implied warranty is not excluded and this extends to an implication of warranty for a particular purpose where such purpose is contemplated by the parties: Crown Printing Co. v. Chas. Beck Co., supra.

The plaintiff, in its statement of claim, alleged an agreement partly oral and partly written and therefore as an entirety in parol. The court below took the position that the writing constituted the entire agreement. Plaintiff alleged that the defendant was aware of the character and process of manufacture employed in plaintiff's plant, particularly that it employed a stiff or heavy mud in impregnating the grids which formed a part of the batteries manufactured by it; that the machine was to be constructed and equipped for the purpose of applying a particular mixture to the storage battery grids; that the parties entered into a written agreement, a copy of which was attached, providing for the use of the machine, terms of payment, and its ultimate purchase; and that the machine was not fit for that purpose. Bearing in mind that an implied warranty arises by implication of law, we believe that the pleadings were sufficient. The suit is, in fact, in disaffirmance of the contract. It is facts and not legal conclusions that are to be set forth in a statement of claim.

Evidence was offered, as we have shown, tending to prove that the defendant visited the plaintiff's plant and examined the "mud or mix," that his attention was specifically called to the fact that they employed a heavy "mud or mix," and that such mixture was an essential part of their process, as well as the fact that the grids or plates were of such size and formation

that they would require an equipment that would accommodate them. It also appeared that the machine was constructed in certain particulars so as to accommodate itself to the process employed by plaintiff, and that the machine was not completed until additional information as to the needs of the plaintiff was furnished to the defendant. In a letter to the plaintiff dated December 30, 1930, the defendant said: "We have gone as far as we can on the machine without the grids, and work is now at a standstill ...... Attached you will find in duplicate our standard lease form, covering the machine ...... We will have our man in Milldale at the time the machine is received, and will have you operating satisfactorily in a very short time." It will be noted that in this letter defendant states that he will have the plaintiff operating *satisfactorily* in a very short time. The evidence is not only uncontradicted but corroborated by defendant's own witnesses that the machine, when installed, would not operate on the "mud or mix" used by the plaintiff. This testimony furnished at least a question for the jury as to the fitness of the machine for the purpose for which it was ordered. In addition, there was a considerable amount of other pertinent testimony to which we have not referred.

It does not follow, however, that judgment should be entered for either party. The question of implied warranty was not submitted to the jury and, in addition, several efforts were made by the defendant to show that the machine in question was of a definite, known type, manufactured under a patent, but at the suggestion of the trial court the most of this evidence was not received. The record shows, in one instance, that counsel for the defendant asked a question, the plain purport of which was an attempt to prove that the parties contracted for a stock machine known as the Price Battery Plate Pasting Machine. The question was objected to by counsel for the plaintiff, and the objection was sus-

tained by the court. Another question was asked of a witness as to whether the machines were known by a definite name. This testimony should have been received as it bore directly upon the question as to whether the machine contracted for was a known, described, and definite article. "But evidence to explain the subject-matter of an agreement, is essentially different from that which varies the terms in which the contract is conceived. It is the dictate of common sense, and therefore a rule of law, that every written instrument is to be interpreted according to the subject-matter, and yet the nature and qualities of the subject-matter are seldom fully stated, often only alluded to in the writing ...... Now in this case, as in many others, it is obvious we must resort to parol evidence in explanation of the scope and object of the agreement, if we would cause it to have the effect the parties intended it should have": Barnhart v. Riddle, 29 Pa. 92, 96.

We are of the opinion that justice can only be done by a retrial when full opportunity should be given to both parties to offer facts bearing upon the question as to whether the machine purchased by the plaintiff was a known, described, and definite article, or an article to be constructed to meet the needs of the plaintiff, but of a general type theretofore employed. Evidence should also be received bearing upon the question as to whether the machine which was contracted for was sold under a patent name, or was a machine which used a patented device and the name was not sufficient to describe the article. As we have pointed out in the case of Ellsworth v. Husband, 119 Pa. Superior Ct. 245, 181 A. 90, the court on an application for a motion for judgment n. o. v. may grant a new trial where justice requires it. "Though the grant of a new trial is a matter largely in the discretion of the court below, it should be ordered where necessary to reach a just deter-

mination of the merits of the controversy": Am. Products Co. v. Franklin Q. Refg. Co., 275 Pa. 332, 337, 119 A. 414.

Judgment reversed with a venire facias de novo.