## Beckman, Secretary of Banking, Appellant, *v.* Archer.

Argued November 23, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Morris Gerber,* with him *John W. Lord, Jr.,* Special Deputy Attorney General, *Orville Brown,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellant.

*Robert T. McCracken,* with him *Franklin L. Wright,* of *Larzelere & Wright,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 4, 1943:

A written agreement was entered into on December 29, 1930, between the Ardmore Title and Trust Company, which was in failing circumstances, and the Merion Title and Trust Company of Ardmore. Ardmore Company assigned to Merion Company all of its assets, and in consideration thereof Merion Company assumed and agreed "to pay and discharge all of the liabilities and obligations of Ardmore Company to its depositors and all other creditors, . . . which liabilities and obligations shall be paid and discharged in the manner and at the time payment and discharge thereof may be legally

required by such depositors and/or creditors, but Merion Company may anticipate payment thereof." Merion Company was to "absorb and liquidate the property and assets of Ardmore Company and, as this is from time to time accomplished, credit to the asset account all sums realized by absorption and/or liquidation." Ardmore Company agreed to procure from its directors and/or certain of its stockholders a collateral agreement whereby said directors and/or stockholders would become liable to indemnify Merion Company to the extent of $75,000 for all loss, damage and expense it might incur in connection with the transaction. After Merion Company should have absorbed or liquidated sufficient assets of Ardmore Company to repay Merion Company for all the liabilities assumed by it, together with costs and expenses, Merion Company was either to re-assign any remaining assets or continue to liquidate them and pay the net proceeds to Ardmore Company. Upon completion of the liquidation Ardmore Company was to surrender its charter and dissolve.

In accordance with this agreement a group of directors or former directors of Ardmore Company entered, on the same day, into a written agreement with Merion Company, wherein they covenanted that if, upon liquidation of the assets, Merion Company should find that the proceeds were not sufficient to pay and discharge all of the liabilities and obligations of Ardmore Company and all costs and expenses, they would pay to Merion Company upon demand a sum not exceeding $75,000 on account of the deficiency, no signer to be liable for more than the amount set opposite his name. The liquidation of the assets by Merion Company was to be governed in all respects by the terms of the agreement between the two Companies, and the indemnity agreement was not in any way to "restrict or modify the rights, duties and obligations of either Company under such other agreement, except as expressly herein set forth."

Merion Company immediately took possession of the assets of Ardmore Company and assumed its liabilities, the latter amounting to $2,408,412.83. Ten months later, on October 28, 1931, Merion Company, being then insolvent, was itself taken over by the Secretary of Banking. All of the assets of Ardmore Company have been absorbed or liquidated by Merion Company and by the Secretary of Banking as receiver, and there has been realized therefrom the sum of $1,476,686.74. There has been paid out by Merion Company to the creditors of Ardmore Company, either directly or by way of liquidating dividends, a total of $1,694,366.60. Thus Merion Company has sustained a present loss on the transaction of $217,679.86. It is asserted that further dividends to be paid by the Merion Company receivership will give creditors of Ardmore Company an additional $229,-817.15, so that the ultimate excess of payments by Merion Company on account of the liabilities of Ardmore Company over the amount realized from the liquidation of the assets of Ardmore Company will be $447,497.01. Accordingly, the Secretary of Banking as receiver of Merion Company brought suits against the directors of Ardmore Company who signed the indemnity agreement, the one against the present defendant being for $5,000, which was the amount of liability assumed by him in the agreement. To the statement of claim defendant filed an affidavit of defense raising questions of law. Judgment was entered for defendant. The Secretary of Banking appeals.

Plaintiff's claim is attacked by defendant on three principal grounds. One is that the agreement between Ardmore Company and Merion Company was in the nature of a personal service contract and was for the liquidation of the assets of Ardmore Company by Merion Company as a going concern. This contention is without merit: *Assets Realization Company v. Roth*, 226 N. Y. 370, 123 N. E. 743; *State-Planters' Bank & Trust Co. v. First National Bank of Victoria*, 76 Fed. (2) 527.

Another defense is that the statement of claim fails to aver that after the Secretary of Banking took over

Merion Company he complied with a provision of the agreement that, before disposing of any assets at less than their book value or face amount, Merion Company should give an opportunity to directors of Ardmore Company to attempt to obtain a greater price. No such averment was necessary to set forth a cause of action. Moreover, failure to offer such an opportunity would not amount to a fatal breach of the agreement unless it were shown that the Ardmore Company directors could in fact have realized a better price for such assets: *South Bend State Bank v. Department of Financial Institutions*, 213 Ind. 396, 406, 11 N. E. 2d 689, 693.

The third and more meritorious reason assigned by defendant for holding the statement of claim insufficient is the fact that Merion Company did not perform its agreement with Ardmore Company. The principal consideration for Ardmore Company assigning its assets to Merion Company and for defendant and his associates agreeing to indemnify the latter Company was obviously the covenant of Merion Company that it would pay and discharge all the liabilities and obligations of Ardmore Company. The indemnitors were not seeking amelioration or reduction of liability on their part as stockholders or directors of Ardmore Company because no such liability existed: *Gordon, Secretary of Banking, v. Winneberger*, 310 Pa. 362, 165 A. 408. What they desired was to obtain payment for the depositors and other creditors, and it was in reliance upon the agreement of Merion Company that such payment would be made, not in part but in full, that they entered into the indemnity agreement. But of the $2,408,412.83 liabilities of Ardmore Company there has been paid by Merion Company only $1,694,366.60, and plaintiff admits that there will not be paid by that Company more than a total of $1,924,-183.75, leaving an unpaid balance of $484,229.08. The obligation of Merion Company under the agreement was not performed by its assuming the liabilities of Ardmore Company as a mere bookkeeping entry; it could be performed only by actual payment. How, then, can there

be any legal justification for an enforcement by Merion Company of the obligation of the indemnitors when it has not performed its own obligation which constituted the consideration for which the assignment of Ardmore Company's assets was made and the covenant of indemnity given? It is suggested that Ardmore Company's depositors may be considered to have entered into implied novation agreements whereby they surrendered their claims against Ardmore Company and accepted the obligation of Merion Company instead, but there is nothing contained in the statement of claim to support such a conclusion. Plaintiff argues that the agreement of Merion Company being to pay and discharge the liabilities of Ardmore Company only "in the manner and at the time payment and discharge thereof may be legally required by such depositors and/or creditors," Merion Company did perform this obligation because, after it went into receivership, payment could be "legally required" by the depositors and other creditors only in the form of liquidating dividends and to the extent of the assets available. Such an interpretation of this provision is quite untenable. It would whittle down the obligation of Merion Company to a payment not of "all of the liabilities and obligations of Ardmore Company" but only such part thereof as it might be able to pay if it should become insolvent—a contingency certainly not contemplated when the agreement between the two Companies and the agreement between Merion Company and the indemnitors were made. The words "legally required" were obviously intended to provide nothing more than that it should not be incumbent upon Merion Company to pay depositors until they actually demanded payment, for only upon such demand being made could payment be "legally required"; on the other hand, Merion Company was given the right to "anticipate payment" if it so desired. Merion Company, not having made the payments which it agreed to make, cannot recover on the indemnity agreement.

Judgment affirmed.