## Demos Construction Co., Inc. *v.* Service Supply Corporation, Appellant.

624

Argued October 7, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ. (RENO, J., absent).

*Hubert J. Horan, Jr.,* for appellant.

*Bertram Bennett,* of *Jenkins, Bennett & Libby,* for appellee.

OPINION BY HIRT, J., December 9, 1943:

Plaintiff by contract in writing, leased to the defendant a specified machine together with a quantity of pipe and fittings. Defendant is a dealer in new and used construction machinery and it was agreed that the

equipment was leased for the use of Benjamin Foster Company in the building of a large dam at Enfield, Massachusetts. The function of the machine was to pump mixed concrete through the pipe and deliver it to the forms. After delivery on the work, the Foster Company made three unsuccessful attempts to operate the machine and then returned it to plaintiff in New York. When the machine was returned it was choked with hardened concrete and parts were broken. This action was brought on the written contract to recover the cost of restoring the machine to its former condition, together with $1,500, the amount of rental unpaid. The case was tried by a judge without a jury resulting in a final judgment for plaintiff. Defendant in this appeal questions the refusal of the court to enter judgment n.o.v. and, in the alternative, to grant a new trial.

Defendant's contentions are twofold: That it was induced to sign the lease by plaintiff's parol representations that the machine would operate satisfactorily, and that there was an implied warranty arising from the contract as to the fitness of the machine for the purposes for which it was leased. Both of these contentions assume that the machine was of faulty design and would not function as a unit without accessory equipment not included in the lease. This is not established by the evidence. Defendant's testimony is that an experienced operator (whether his experience extended to this particular type of machine does not appear) in the employ of the Foster Company was unable to deliver concrete to the work by means of the machine. Plaintiff's testimony, on the contrary, is that it had used this particular machine with success and that it would work perfectly in the hands of a skillful operator. No mechanical defect in the machine was alleged or proven and the contract recites specifically: "The Lessee acknowledges that the machine and equipment have been inspected by its representative prior to delivery and have found it to be' in good operating condition."

The contract describes the subject of the lease as "a Rex Pump-Crete Machine, model 190, made by the Chain Belt Co. of Milwaukee", with about 700 feet of seven inch pipe and enumerated fittings. A "re-mixer" was not a part of this model of Pump-Crete machine although such device was incorporated into later models designed and sold by this manufacturer. The function of a re-mixer is to agitate the wet concrete as it comes from the mixer, thus making for uniform fluidity just before it is pumped through the delivery pipes to the forms. There is some evidence that the absence of a re-mixer on the machine was questioned before the lease was executed. Defendant's salesman testified that one of the men who had inspected the machine for the Foster Company "before the negotiations were complete" reported to plaintiff's president that "there was no re-mixer with the machine and [he replied] that it was not necessary with that machine, that they had used the machine in New York City without it." The testimony was received without objection and, although hearsay, had the value of direct evidence, if relevant to the issue. *Yankunos v. Hinds Catering Co.*, 130 Pa. Superior Ct. 187, 196 A. 520; *Harrah v. Montour Railroad Co.*, 321 Pa. 526, 184 A. 666. The trial judge in his findings ignored this testimony and the court en banc considered it "of negligible weight, ...... entitled to but scant, if any, credence." This testimony, even if it had been accepted, was not sufficient to modify the writing. The discussion as to the absence of a re-mixer was but a part of the negotiations which merged in the contract when executed. Defendant knew that machine 'model 190' was designed to operate without a re-mixer. If there was doubt that the machine would function to the satisfaction of defendant without the device it was for it to guard against that contingency in its written contract. The lease as executed was a contract complete within itself "couched in such terms as import a complete legal obligation without any uncertainty as to

the object or extent of the engagement, [therefore] it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing": *Berardini v. Kay*, 326 Pa. 481, 192 A. 882. In general an express warranty must be embodied within the written contract, and cannot be added to the agreement by parol evidence. *Madison-Kipp Corp. v. Price B. Corp.*, 311 Pa. 22, 166 A. 377.

There was no implied warranty under the contract as to fitness. This phase of the appeal is ruled by §15, par. 4, of the Sales Act of May 19, 1915, P. L. 543, 69 PS 124. That section provides: "In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." The provision is equally applicable to personal property leased, as to things sold. *Crown Printing Co. v. Chas. Beck Co.*, 73 Pa. Superior Ct. 419. Here the defendant sought out the machine and examined it before leasing it and found it in good operating condition. (cf. §15, par. 3, of the Sales Act, supra.) The lease identified a specific model of concrete pumping machine by its trade name and the name of the manufacturer. Defendant having received the machine so described in the contract, is not in position to assert an implied warranty as to fitness for the work for which it was leased. *Madison-Kipp Corp. v. Price B. Corp.*, supra.

This conclusion is not affected by the fact that plaintiff agreed that the machine was to be used by the Foster Company in the performance of definite work. Although the machine was supplied for use on a specified job it was not leased for a *special* purpose. The contemplated use was within the single general purpose of the machine—to deliver mixed concrete to the work. But even if it were leased for a special use no implied warranty of fitness arose. "If a thing be ordered of the manufacturer for a special purpose, and

it be supplied and sold for that purpose, there is an implied warranty that it is fit for that purpose. But this principle is limited to cases where a thing is ordered for a special purpose, and must not be applied to those where a special thing is ordered, although this be intended for a special purpose": *American Home Savings Bank Co. v. Guardian Trust Co.*, 210 Pa. 320, 59 A. 1108. *Port Carbon Iron Co. v. Groves*, 68 Pa. 149; *Hill & MacMillan, Inc. v. Taylor*, 304 Pa. 18, 155 A. 103. Moreover the testimony wholly fails to establish that defendant, a dealer in construction machinery, relied upon plaintiff's judgment that the machine in question was suitable for its needs. The rule of *Hobart Mfg. Co. v. Rodziewicz*, 125 Pa. Superior Ct. 240, 246, 189 A. 580, therefore, has no application.

Judgment affirmed.