## Pennsylvania Railroad Company, Appellant, *v.* J. Jacob Shannon & Co. et al.

Argued November 15, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*J. Peter Williams*, with him *Barnes, Dechert, Price & Myers*, for plaintiff appellant.

*Leon J. Obermayer*, with him *George B. Clothier* and *Edmonds, Obermayer & Rebmann*, for J. Jacob Shannon & Co., defendant, appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 5, 1950:

This is an appeal from the refusal of the court below to remove a nonsuit entered against appellant in favor

of appellee (defendant) and the additional defendants.

The Pennsylvania Railroad Company (appellant) brought an action in assumpsit against J. Jacob Shannon & Co. (appellee) for the sum of $3,900.00, with interest. The De Vincentis Construction Company and Anthony De Vincentis were joined as additional defendants but are not parties in this appeal. The case was tried before a judge without a jury.

On March 9, 1942, the railroad company and the Shannon Company entered into a written contract. The contract consisted of a letter written by the railroad company to the Shannon Company and accepted by it in writing endorsed on the letter. By the terms of the letter, the railroad company requested Shannon Company to furnish the railroad with "equipment for the construction of new South Philadelphia Terminal Yard, Philadelphia, Pa." The equipment required consisted of a Truck Crane, with the operator, to be supplied by Shannon Company and an "Allis-Chalmers 'L O' type oil burning Crawler Tractor with bulldozer". The operator was also to be supplied by the appellee. Payment of the wages of the crane operator (an employe of Shannon) was included in the rental contract. The operator took his orders for the performance of the railroad company's work from its supervisor.

The contract contained the following provisions:

"The Contractor (i.e., Shannon Company) will furnish and maintain Workmen's Compensation Insurance and the Railroad Company will furnish Public Liability Insurance.

"The Contractor covenants and agrees to be responsible for and protect, indemnify and save harmless the Railroad Company from and against the payments of any and all sums of money by reason of any accidents, injuries or damages which may happen or occur on or about any of the said work or arise by reason thereof,

from a cause not attributable to the negligence of the Railroad Company; also to protect the Railroad Company from payments for accidents arising from the presence of the employes of the Contractor, on or about the Railroad Company's premises."

In pursuance of the contract, the crane was used for a variety of purposes by the railroad company for approximately six months. On June 17, 1942, the crane was being used to lift an expensive track cutting machine from the street (Delaware Avenue and Reed Street in South Philadelphia) onto a trailer. This location was just outside the physical limits of the new South Philadelphia Terminal Yard (then under construction) but adjacent to the garage where the crane was normally kept. The crane was being operated by the authorized employe of Shannon Company but the railroad company's supervisor ordered the job to be done. When the track cutting machine was about six feet off the ground, a sheave pin of the crane, which supports the boom cable, broke causing the boom to suddenly collapse and fall on top of the track cutting machine totally damaging it. The appellant was obliged to compensate the owner of the track cutting machine for the loss ($3,900.00) thus occasioned by the mishap.

This action in assumpsit was instituted by the railroad company against Shannon Company to recover the amount of the loss. It was based upon two theories (1) that the Shannon Company was liable to compensate the railroad company for the loss under the so-called indemnity clause of the rental contract, (2) that Shannon Company was liable under a breach of implied warranty that the crane was fit for the purpose for which it was being used.

At the trial, the railroad company offered evidence establishing the facts as above recited. Counsel for the

railroad company sought to introduce testimony of custom or usage concerning the meaning of the term "Public Liability Insurance". Objection to the admission of this testimony was sustained. After proof of the contract and the above recital of the accident, the trial judge interrupted counsel for the railroad company and the following colloquy took place:

"The Court: Is there any other testimony in any other respect?

"Mr. Williams (counsel for the railroad company): Yes, sir, testimony as to the amount of the loss and the value and as to how the accident happened."

The trial judge then entered a nonsuit in favor of all defendants. This appeal followed.

Although this Court has said that the practice of granting nonsuits in actions at law heard by judges without juries is not to be commended, *Gaines v. Philadelphia Transportation Company*, 359 Pa. 610, 613, 59 A. 2d 916, there are occasions when the trial judge should enter a nonsuit before the plaintiff calls witnesses to testify as to the extent of the injury or the damages: See, Pa. R. C. P. 224. This may be done, within the discretion of the trial judge if, in his opinion, the plaintiff's evidence is not sufficient in law to maintain the action: Act of March 11, 1875, P. L. 6, 12 PS 645. In *Ehrlich v. United States Fidelity and Guaranty Company*, 356 Pa. 417, 424, 51 A. 2d 794, this Court said: "When the existence of facts constituting an affirmative defense are admitted by a plaintiff or are established by uncontradicted testimony in the plaintiff's case with such conclusiveness as to exclude the reasonable possibility of an inference otherwise, a nonsuit is proper (citing cases)."

The nonsuit was properly entered in this case. When considering whether a nonsuit has been properly entered,

the plaintiff (here the railroad company) is entitled to the benefit of every reasonable inference of fact deducible from the evidence: *Kimble v. Wilson et al.*, 352 Pa. 275, 277, 42 A. 2d 526; *Ehrlich v. United States Fidelity and Guaranty Company*, supra, 423.

By the terms of the contract hereinbefore quoted, the Shannon Company agreed to "protect, indemnify and save harmless" the Railroad Company from and against payments by reason of *any* accidents, injuries or damages arising from causes not attributable to the negligence of the Railroad Company. For this the Railroad Company, in turn, agreed to furnish public liability insurance. The parties, by the plain terms of the contract, intended that the public liability insurance which the Railroad Company was to supply embraced property damage as well as damage to the person because the term included both elements of damage. By paragraph 8 of the amended complaint, the Railroad Company concedes that it did not provide insurance against property damage. If the Railroad Company had provided such insurance, the *insurer* would have paid this loss and that would have been the end of the claim unless, of course, the insurer became insolvent. If the Shannon Company had been obliged to pay the loss, it would have been subrogated to the Railroad Company's right on its policy. By the Railroad's failure to provide such liability insurance, the Shannon Company was deprived of a right of recoupment or subrogation and therefore would suffer by reason of the Railroad Company's failure to obtain full coverage. The Railroad Company's failure to perform its contract prevents recovery from the Shannon Company on its agreement to indemnify. See: *Beckman v. Archer*, 346 Pa. 117, 29 A. 2d 506; Restatement, Contracts, Sec. 314.

The additional contentions of the railroad company are without merit. There was no implied warranty that

the crane was fit for the purpose for which it was being used. The evidence discloses that the railroad company hired a specified piece of equipment—not a piece of equipment for a particular purpose: *American Home Savings Bank Company v. Guardian Trust Company*, 210 Pa. 320, 59 A. 1108; *Hill & MacMillan, Inc., v. Taylor et al.*, 304 Pa. 18, 155 A. 103; *Demos Construction Co., Inc. v. Service Supply Corporation*, 153 Pa. Superior Ct. 623, 34 A. 2d 828; Section 15 (1) of The Sales Act (Act of May 19, 1915, P. L. 543, 69 PS 124).

We do not agree that the Railroad Company was required to use the crane within certain physical limits. The contract provides: "The Railroad Company desires . . . [Shannon Company] . . . to furnish equipment for the construction of new South Philadelphia Terminal Yard, Philadelphia, Pa." The railroad company concedes that the mishap occurred just outside the physical limits of the South Philadelphia Terminal Yard (under construction), but asserts that the crane was being used at the time in furtherance of the work being done on the South Philadelphia Terminal Yard. The terms of the contract do not restrict the use of the crane to the physical limits of the South Philadelphia Terminal Yard. The contract provides that equipment was to be furnished for the *construction* of the yard. If it became necessary to operate outside the physical limits *in furthering the construction of the yard*, then appellant was still operating within the terms of the contract. But this becomes unimportant as the railroad company failed to perform its covenant to furnish public liability insurance.

For the foregoing reasons the learned trial judge correctly entered the nonsuit.

Judgment affirmed.