## Sheriff v. Eisele

*F. Brewster Wickersham, Hermas L. Weary, Weary, Hess & Humer*, for plaintiff.

*George F. Douglas, Jr., Faller & Douglas; J. Boyd Landis, Landis & McIntosh*, for defendants.

SHUGHART, P. J., March 9, 1956.—At the trial of the above cause before a jury, after the plaintiff had presented his evidence on the question of liability, a compulsory nonsuit was entered as to both defendants

and additional defendant. The motion of plaintiff to remove the nonsuit is now before the court for consideration.

The action arose out of an accident which occurred on October 4, 1949, on U. S. Route 11, at the eastern end of the Borough of Carlisle. The testimony presented at the trial revealed that just prior to the accident plaintiff Sheriff was operating a Cushman motor scooter eastwardly on Route 11 with the intention of returning to the service station where he was employed, which was located on the northern side of the highway. Plaintiff was followed by defendant Eisele, who was operating a Plymouth sedan as a servant and within the scope of his employment with defendants, E. G. and Klara M. Smith, trading and doing business as Reading Hosiery Outlets, who were the owners of the vehicle. Additional defendant, Leonard P. Dileanis, was operating a Mercury sedan in a westwardly direction on Route 11. A collision occurred, in which all three vehicles were involved.

"In passing on a motion to remove a compulsory nonsuit and in reviewing a denial of such motion, the evidence must be considered in a light most favorable to plaintiff, and he must be given the benefit of every inference and deduction reasonably to be made therefrom: Pennsylvania Railroad Co. v. J. Jacob Shannon & Co., 363 Pa. 438, 70 A. 2d 321; Kallman v. Triangle Hotel Co. of Pennsylvania, 357 Pa. 39, 52 A. 2d 900": Szukics v. Ruch, 367 Pa. 646, 649.

This rule will be the guide by which the facts of the case are set forth. In the first place, it might be well to state that plaintiff himself was seriously injured in the accident and at the trial stated that he remembered nothing about the accident. He gave no testimony as to the events and circumstances prior to the accident and stated that the first he recalled afterward was going to the Veterans Hospital.

From the testimony it appeared that prior to the accident plaintiff, defendant Eisele and a witness by the name of Van Asdalan were proceeding eastwardly on Route 11 from the Borough of Carlisle. Plaintiff was the first in line and was operating a Cushman scooter. Eisele was next and Van Asdalan brought up the rear.

The motor scooter was described as being approximately five feet in length and one and one-half feet wide. The motor was located under the seat on which the operator sat. This seat was located approximately two feet from the ground.

Route 11, at and near the point of the accident, is a two-lane highway approximately 20 feet wide. There is a no passing zone in the area and the speed limit is 35 miles per hour. The service station to which plaintiff was returning is located on the north side of the highway; next to the station on the west is located a motor vehicle sales agency. The areas comprising the service station and the sales agency were paved out to the edge of the highway and there was no barrier between the two properties so that persons going into either one from Route 11 might and did travel over and upon the property of the other.

The witness Van Asdalan testified that as he followed defendant Eisele east on Route 11 each were traveling between 25 and 30 miles per hour. He stated that he did not observe the scooter traveling in front of defendant. He observed the Mercury sedan operated by additional defendant Dileanis approaching in the other lane of traffic and as it was in front of the sales agency he saw the scooter in front of the Mercury and saw a man (plaintiff) thrown back over the top of the Mercury. Next he saw the scooter strike the vehicle operated by Eisele. He described these events of the collision of the scooter with the Mercury and

subsequent collision of the scooter with the Plymouth as being one crash, but consistently stated that the events occurred in the order given.

Dileanis, the operator of the Mercury and additional defendant, was called as on cross-examination and stated that he at no time observed the scooter until it was in the road directly in front of him. He stated that he turned his vehicle to the right to avoid plaintiff but was unable to avoid colliding with the scooter.

Defendant Eisele was, likewise, called as on cross-examination and testified that he observed plaintiff give a signal for a left turn, but stated that he didn't recall whether plaintiff had first looked to the rear. Defendants' counsel attempted to elicit from Eisele the location of the scooter and his own vehicle on the road when the signal was given and to have him testify to his distance behind plaintiff when the signal was given, but the vigorous objection of plaintiff's counsel was sustained. The result is that there was testimony that a signal for a left turn was given by plaintiff, but no testimony as to either his own nor the position of any of the other vehicles at the time.

Plaintiff's counsel does not charge Dileanis with any negligence but contends that since the collision occurred in front of the sales agency some 60 feet from the property line of the service station, an inference is created either that Eisele struck and forced plaintiff's scooter in front of the Mercury or that plaintiff swung in front of the Mercury to avoid being hit by defendant. That the point of impact would not support such inference is shown by the testimony of plaintiff's employer, the owner of the service station, who stated that in turning left into his station, as plaintiff was attempting to do, people left their own side of the road before reaching the property

line of the station. This witness further testified that the scooter plaintiff was operating, and which was used in the business, was never parked on the east side of his property. This would be further reason for the plaintiff to cross the center line of the road before he reached the property line. This testimony is certainly supported by common knowledge that turns into properties alongside the highway are not generally made at right angles.

The facts, likewise, fail to support an inference that defendants' vehicle struck the scooter, driving it into the Mercury. In addition to Van Asdalan's positive statements that the scooter first hit the Mercury, then defendants' Plymouth, the physical facts support this view. From the oral testimony and from the exhibits 3 and 4 it appears that all of the damage to defendants' vehicle was to the left side, none to the front. Secondly, Wise, plaintiff's employer, testified that the left door handle of defendants' Plymouth, after the accident, was lying in the motor of the scooter which was located under the seat upon which plaintiff had been sitting. The fact that the motor of the scooter was less than two feet from the ground while the door handle of the car was approximately three and one-half feet, makes it clear that when the scooter struck the Plymouth it was off the ground as a result of the prior impact with the Mercury, which is completely in harmony with Van Asdalan's testimony.

It is contended that the testimony supports an inference that Eisele was negligent in following too closely, that he failed to heed the hand signal of plaintiff or that his negligence consisted of a combination of the two. It cannot be successfully contended that defendant Eisele was operating at an excessive speed for the only evidence adduced showed him operating within the posted limit.

As to the distance between the scooter and defendants' vehicle, we have no direct testimony. Defendant Eisele, called as on cross-examination, was apparently ready and willing to state these distances but was prevented from doing so by plaintiff's objection.

Plaintiff's counsel contends that it can be inferred that Eisele was following too closely from the fact that the impact of the scooter with the Mercury and that of the scooter with the Plymouth happened in such rapid sequence that it constituted one "crash". It, of course, must be kept in mind that the Mercury and the Plymouth were approaching each other and not going in the same direction. There was no estimate of the speed of the Mercury but the speed of the defendants' vehicle was estimated at between 25 and 30 miles per hour. An equal speed of the Mercury would mean that they approached each other at a rate of approximately 60 miles per hour or 88 feet per second. If the speed of the Mercury was greater they, of course, covered the distance between them more rapidly. In the absence of any estimate of the speed of the Mercury, no inference that the Plymouth was following plaintiff too closely can be drawn from the fact that there was but one noise of collision. Under all the circumstances, an assumption that the collision occurred because defendant followed plaintiff too closely would constitute nothing but hazard or guess.

Under the testimony here, negligence cannot be imputed to Eisele merely for his failure to heed the signal of plaintiff that he was going to turn left. Article X, sec. 1012 (a) of The Vehicle Code, as amended, 75 PS §571 (a), provides, inter alia: "The driver of any vehicle . . . before starting, stopping or turning from a direct line, *shall first see that such movement can be made in safety*, . . . and whenever the operation of any other vehicle *approaching* or *following*

may be affected by such movement, shall give a signal, . . . plainly visible to the driver of such other vehicle of the intention to make such movement." (Italics supplied.)

It is apparent that the first duty resting upon plaintiff here was to first "see" that he could slow his vehicle and make his turn "in safety". In order to do so, the duty rested upon him to observe traffic in front and behind him. Only after that observation led him to believe he could make such "movement in safety" could he render a person observing his signal guilty of negligence for failing to heed the signal. The testimony in this case that plaintiff gave a signal, without showing that he had observed cirumstances entitling him to belief that he could slow and/or turn to the left in safety, availed him naught in his quest to prove defendants negligent. The rigorous efforts of plaintiff's counsel to suppress the testimony of Eisele as to the distance between him and plaintiff when the signal was given clearly indicates that his answer would not have been favorable to plaintiff.

The proof of defendants' negligence here rests upon circumstantial evidence—there is not one shred of direct evidence to establish negligence of either defendants or additional defendant.

" 'Affirmative proof of negligence by circumstantial evidence must be by evidence which precludes possibility of injury in any other way and is such that the only reasonable inference to be deduced therefrom is that the accident was caused by the negligence of the defendant in the manner alleged: Donaldson v. Pittsburgh Railways Co., 358 Pa. 33, 37, 55 A. 2d 759; Stauffer v. Railway Express Agency, Inc., 355 Pa. 24, 29, 47 A. 2d 817, 819:' Stanalonis v. Branch Motor Express Co., 358 Pa. 426, 428, 57 A. 2d 866": Fisher v. Sheppard, 366 Pa. 347, 351.

"It is not enough to show merely that an accident occurred, or that it may have happened from any of several causes, equally probable, for only one of which the defendant would be responsible; *a jury cannot be allowed to find a verdict on the basis of a mere guess or conjecture;* there must be a description of the facts and circumstances sufficient to justify a reasonable conclusion that the defendant was negligent and thereby caused the accident": Stauffer v. Railway Express Agency, Inc., 355 Pa. 24, 25. (Italics supplied.)

In the instant case, Dileanis testified that a line of traffic preceded the scooter and that there was a car in front of him; for this reason he did not see any signal given by plaintiff. This testimony produced by plaintiff, and not contradicted, makes it clear that plaintiff properly does not contend that Dileanis was guilty of any negligence.

A careful consideration of all of the testimony, giving plaintiff the benefit of every favorable inference, leads to the inescapable conclusion that it is grossly insufficient to support a conclusion of defendants' negligence as against, at least, an equally strong inference that the collision took place because plaintiff failed to exercise care in turning to his left in the face of oncoming traffic. To have permitted the jury in this instance to render a verdict for plaintiff where little, except the happening of an accident, has been shown, would be to permit them to guess as to the cause, which we may not do.

And now, March 9, 1956, at 11:55 a.m., for reasons given, plaintiff's motion to take off the compulsory nonsuit is overruled. An exception is noted.