## Edmondson v. McSorley, Appellant.

Argued April 30, 1935.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Harold E. McCamey*, with him *Hamilton A. Robinson*, of *Dickie, Robinson & McCamey*, for appellant.

*Ralph F. Smith*, for appellee, filed no brief.

Opinion by Stadtfeld, J., July 18, 1935:

This was an action in trespass for damages for false arrest. An affidavit of defense was filed denying that

the defendant caused the arrest. The first trial of the case resulted in a verdict in favor of the plaintiff in the sum of $900. The defendant filed a motion for new trial which was granted because certain records had been admitted without proper proof. The case was again tried and resulted in a verdict in favor of the plaintiff in the sum of $2,000. The court en banc, in an opinion by MARSHALL (T. M.), J. refused defendant's motion for judgment non obstante veredicto and new trial and reduced the amount of the verdict to $1,500. Judgment was entered on the reduced verdict, from which this appeal is taken.

The plaintiff's statement alleged that on October 2, 1924, the defendant caused one Mellon, acting inspector of police, to make an information against the plaintiff charging him with the theft of an automobile, whereupon a warrant for larceny was issued and the plaintiff was arrested. The plaintiff's testimony revealed that he had been employed by the defendant as a car washer and on August 12 had taken a car owned by a Mrs. Flannery, from the garage without permission of any one, for the purpose of apprehending certain alleged criminals who had previously robbed the garage. The automobile was damaged to an extent, the amount of which is in controversy. Subsequently, the plaintiff alleges certain moneys were due him for wages and when a controversy arose over that question the defendant called the police department and told them to arrest him for stealing a car. The police came to the garage and placed the plaintiff in jail on a suspicious person charge. This occurred on October 4, 1924, and at the traffic court hearing on October 6th, an insurance investigator named Ferrier, who claimed that on or about August 12th he had made an information against the plaintiff, testified as to the stolen automobile whereupon Magistrate Ralph Smith had Acting Inspector Mellon make an information upon which he was held for court.

The police court records on the information alleged to have been made by Ferrier had been lost and could not be produced in court. In default of bail, plaintiff was incarcerated in jail from October 7, to December 11, 1924, when he was tried and acquitted. The indictment charged larceny and receiving stolen goods. The defendant at all times denied any controversy over wages and claimed that he had merely called the police advising them that the man for whom they were hunting, pursuant to the information under date of August 12th, was at the garage.

The assignments of error relate to the refusal of defendant's request for judgment non obstante veredicto, refusal of defendant's motion for new trial, the refusal to strike out certain testimony, failure of the court to instruct the jury on certain matters, alleged errors in the charge, error in allowing certain subpoenas, grand jury records and information, to go out to the jury room.

Appellant contends that there was a fatal variance between the allegations in the statement of claim, charging an information made on October 2, 1924, and the proof, and that for that reason, judgment should have been entered for defendant non obstante veredicto.

An examination of the record discloses that neither in appellant's motion for compulsory non-suit, nor in his request for binding instructions, was this question raised.

As stated in Saxman v. McCormick, 278 Pa. 268, 273, 122 A. 296: "Neither can the question as to the alleged variance between the proof and the pleadings be raised here, not having been raised in the court below." To same effect Boyd v. E. F. Houghton & Co., 269 Pa. 273, 112 A. 530; Hanley v. Waxman, 80 Pa. Superior Ct. 274.

Appellant contends that there was no evidence that

he made or authorized an information against the plaintiff.

Plaintiff testified that when he insisted on receiving his wages, the defendant used the following language: "A. He said, 'You don't need your money now.' I said, 'Sure, I need my money.' I said, 'I worked hard for it, but I can't stand to work day and night.' He says, 'You are starting an argument.' I say, 'How is that?' He said, 'I will have you locked up.' I say, 'What you have me locked up for?' He says, 'I will say you stole that car.' And I say, 'Well, it is up to you. Go ahead and do whatever you want to do. You got to pay me my money.' He say, 'I won't do it. I will have you locked up.' I says, 'Go ahead.' He said, 'Get out of here.' I say, 'No. You owe me my wages. I ain't going nowhere until you pay me. If you want to call it you firing me I will go out your garage, but I won't go until you pay me.' He say, 'You won't go.' I say, 'No, sir.' He say, 'I will just call them up.' I was standing about as far as from here to you, (indicating) and heard every word he said on the telephone. Q. Did he call on the telephone? A. Yes, sir. Q. Who did he call up? A. No. 11 Police Station. Q. What did you hear Mr. McSorley say in your presence over the telephone about having you arrested? A. Arthur McSorley say—whoever it was answered the phone in No. 11—he says, 'Send a patrolman out to Hobart and Wendover Garage right away.' He say, 'I got a man down here I want to be locked up. He stole a machine about two months ago and I want to have him locked up,' and about ten minutes Mr. Harry Scott came in."

As a result of the argument the plaintiff was arrested on a suspicious person charge. After the hearing, two days later, he was held for court on the charge of larceny. The plaintiff claims that the defendant was present at this hearing, that he was present in the criminal court when his case was tried and that evidence was

offered showing that the defendant's name was on the subpoenas issued on six or seven occasions and his name was found amongst witnesses who appeared before the grand jury. The attendant from the criminal court, however, testified that the defendant did not testify before the grand jury—that his name was stricken off.

The plaintiff testified that the defendant herein was present at the hearing at the police station, on October 6, 1924, and testified against him, stating that he stole a machine from the Melwood-Bayard Garage, wrecked it, and stole money and different things at the garage; that the defendant was present in the criminal court at the time of the trial and testified that plaintiff stole a machine and wrecked it and had been dodging around about two months and wasn't able to locate him.

Under the testimony as presented there was a direct conflict as to whether or not the defendant had the plaintiff arrested or whether he was arrested as a result of the action of the insurance company's representative. This question was submitted to the jury in a full and comprehensive charge which fairly presented the issue. Appellant contends that the court erred "in failing to charge that the jury must find that the defendant caused the arrest or was the prosecutor of said charge." An examination of the record shows that the court affirmed defendant's second point which was as follows: "If Arthur McSorley was merely an informer to the police as to where this man was, and if he was wanted upon some other person's complaint, he could not be liable in this action." This instruction was as favorable as present defendant had a right to expect, and we find no merit in this contention of appellant.

The court further instructed the jury "the burden of proof rests upon the plaintiff. The burden of proof means that the evidence must balance in favor of plaintiff. ...... If you decide that the defendant was not

actuated by malice, and he had reasonable probable cause for what he did in this case, bring in a verdict for the defendant and that ends the case." A careful examination of the entire charge would indicate that the court instructed the jury adequately on all the elements involved, and, taken as a whole, appellant has no cause for complaint. If appellant considered the charge inadequate in any respect, he did not avail himself of the opportunity to ask for additional instructions in answer to the question of the court: "Is there anything else, gentlemen?"

Appellant further contends that the court erred in allowing the grand jury records, including the subpoenas for the various scheduled hearings before the grand jury and in criminal court to be taken out with the jury, although the same had not been formally offered in evidence. We quote from the opinion of the lower court: "that the court having ruled the subpoenas and grand jury records admissible, suggested that the plaintiff offer the indictment in evidence, that it was not necessary to have the various records marked as exhibits. At any rate, witnesses were questioned in regard to said records and the case was fully argued and arguments were made pro and con as to the weight to be given to said records. The court also discussed the effect of them at length and the defendant was not hurt by the jury's being permitted to take the complained of records with them to the jury room as they knew all about them." This is a complete answer to appellant's contention on this point.

After a careful examination of the entire record, we are of the opinion that the case was ably tried and fairly submitted on the evidence which raised a question for the jury.

The assignments of error are overruled and judgment affirmed.