No. 81-205

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

R & W LEASING, a Montana Corporation,

Plaintiff and Respondent,

-vs-

JACK MOSHER, d/b/a BIG SKY CAMPER
VILLAGE,

Defendant and Appellant.

---

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin, The Honorable
W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

J. David Penwell, Bozeman, Montana

For Respondent:

Lyman H. Bennett, III, Bozeman, Montana

---

Submitted on Briefs: September 17, 1981

Decided: NOV 12 1981

Filed: NOV 12 1981

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment in the amount of $207.34 plus attorney fees of $650 arising out of a leasing agreement.

Appellant Mosher, manager of the Big Sky Camper Village, came to town from his pristine mountain camping area on February 10, 1978, looking for a truck that would not only assist him in his work as camp manager but would also be able to push a plow attached to its front end. He did not go to all the leasing places in town but went directly to respondent R & W Leasing, Inc. There appellant leased a 1978 Dodge 3/4 ton, four-wheel drive pickup truck.

The total lease agreement obligation owing from appellant to respondent was $11,334.07, with monthly payments of $277, except for the first payment which was $178.07. Twelve payments were made, ending with the January 1979 payment, which totaled $3,225.07. In February 1978, at the time of the lease, a deposit of $277 was made by appellant to immediately obtain the truck.

At the time of the lease, appellant had a snow plow attached to the front end of the truck. Whether the plow belonged to appellant or to the Chrysler Corporation, for whom he worked, is not established in the record. However, there is no question that respondent sold the plow for $650, without appellant's permission, upon repossession of the vehicle by respondent.

Appellant had the truck for approximately one year. During that period he had problems with the truck and had it into respondent's shop a number of times. In October 1978 appellant's wife, while driving the truck down the Gallatin

-2-

Canyon, had an accident, causing damages to the truck in the amount of $1,935.49. The truck was towed into respondent's shop for repairs, and appellant never again had possession of it, although he testified he tried to get it several times. Respondent testified parts were not available, and since appellant's payments were late, it was decided that respondent would terminate the lease and sell the truck. Between the time of the accident and the termination of the lease, appellant rented a substitute vehicle. He later purchased a secondhand Ford truck for $800 and kept it on the job until he left his position as camp manager sometime in 1979.

Following termination of the lease, the respondent obtained two cash bids for the truck, each in the amount of $5,000. Respondent incurred costs of $514.42 for sales and reconditioning costs prior to selling the truck for $7,987.

The purchaser of the truck was allowed $2,100 as a trade-in for another vehicle. However, only $700 was set forth as the value to be allowed on the sale as respondent testified that $1,400 was what it termed an "over allowance." Respondent testified that the over allowance figure of $1,400 was "more than you should have unless you wanted to make the deal."

Respondent received from its insurance company the sum of $1,885 for damages to the truck caused by the October accident. The court found that appellant owed respondent $98.34 for total costs of repairs after allowing credit for the insurance payment. The court's finding follows:

| | | |
|---|---|---|
| Cash Wholesale Price | | $5,000.00 |
| Depreciated Value | $4,375.00 | |
| Premature Termination Factor ($20 x 9 months) | 180.00 | |
| Unpaid Rent (Feb-Apr 1979) | 831.00 | |
| Deposit previously paid by lessee | | 277.00 |
| | | ($ 109.00) |
| Rentals and Repairs | | ($ 98.34) |
| | TOTAL | ($ 207.34) |

Three issues are presented:

1. Whether the trial court erred in disregarding the actual purchase price of the leased vehicle while giving credence to respondent's "appraisals" secured without any notice to the appellant.

2. Whether the trial court erred in ruling against appellant's counterclaim for the value of the snow plow admittedly sold by respondent.

3. Whether the trial court erred in rendering judgment for the respondent.

Appellant first alleges that respondent, according to the paragraph nine in the lease agreement, should have consulted him on appraisals. Appellant's argument, as best we can understand it from his brief, really resolves itself to determining whether the trial court had sufficient facts to make the determination it did. We find there was sufficient testimony introduced on the value of the vehicle and the District Court's use of a "wholesale value" and "retail value" in arriving at the $5,000 figure was within the meaning of paragraph nine of the leasing agreement.

-4-

That paragraph read: "Upon such premature termination, Lessor shall promptly obtain the highest available cash offer at wholesale . . . ."

This Court, in setting the standard of review in nonjury cases, has held numerous times that, "[w]ith regard to the standard of review, this Court has repeatedly stated it will not overturn the findings of fact and conclusions of law if supported by substantial evidence and by the law. Evidence will be viewed in the light most favorable to the prevailing party. [Citations omitted.]" Toeckes v. Baker (1980), ____ Mont. ____, 611 P.2d 609, 611, 37 St.Rep. 948, 950.

The subissue of whether the court erred in ruling against appellant's counterclaim will be discussed under this issue.

As previously noted, the record did not reveal whether appellant originally owned the plow. Respondent does not deny keeping and selling the plow and justifies its actions with a lame excuse that it sold the plow to get collateral to cover money that might be due and owing. However, we cannot find from the facts testified to at trial that the trial judge erred in not allowing appellant's counterclaim.

The third issue concerns granting attorney fees. Appellant alleges that fees of $650 on a $350 claim tried in two hours is excessive. Paragraphs eight and ten of the lease agreement provided for attorney fees in the event of a breach.

Under Rule 15(b), M.R.Civ.P., the court can award damages over and above the amount asked for in the complaint

and greater attorney fees than originally requested. That rule provides:

> "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise the issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not effect the result of the trial of these issues. If evidence is objected to at the trial on the grounds that it was not within the issues made by the pleadings, the Court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The Court may grant a continuance to enable the objecting party to meet such evidence."

See also Kizziar v. Dollar (10th Cir. 1959), 268 F.2d 914, 918.

Here, respondent filed a motion for attorney fees together with a supporting affidavit showing:

| | |
|---|---|
| Correspondence Total | $ 90.00 |
| Office time (8-1/2 hr. at $60/hr) | 425.00 |
| Court time (4-1/2 hr. at $100/hr) | 450.00 |
| TOTAL DUE | $965.00 |

In conformity with the motion, a hearing was held before the court, and the court awarded $650. We find no error.

The final issue concerns whether the court erred in failing to award appellant damages for the alleged breach of implied warranty of merchantability.

Appellant relies on Henningsen v. Bloomfield Motors, Inc. (1960), 32 N.J. 418, 161 A.2d 69, and Whitaker v. Farmhand, Inc. (1977), 173 Mont. 345, 567 P.2d 916, as controlling here on implied warranties.

Under the facts of this case the theory of implied warranty of merchantability and/or the implied warranty of fitness for a particular purpose do not apply. These warranties are only applicable in the event of a "sale" as defined by the Uniform Commercial Code. Section 30-2-106, MCA, defines sale as follows:

> "A 'sale' consists in the passing of title from the seller to the buyer for a price (30-2-401) . . ."

Anderson Uniform Commercial Code (2nd ed.), section 2-106:5 states:

> "Although the Code determines most legal problems without reference to title, a sale is defined as the passing of title from the seller to the buyer for a price. The transfer of title is the essential element or the distinguishing characteristic of a sale of goods."

The lease agreement as entered into by and between appellant and respondent provides in pertinent part:

> "This agreement is one of leasing only, and the lessee shall not have or acquire any right, title, or interest in the vehicle except the right to use or operate it as provided herein. Lessee has no option to purchase the leased vehicle."

On the basis of the above language contained in the lease agreement, as well as on the definition of a "sale" as found in the UCC, no implied warranty of either merchantability or fitness for a particular purpose is applicable to a lease arrangement.

The judgment of the District Court is affirmed.

_____
Justice

-7-

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Mr. Justice Frank B. Morrison, Jr., dissenting:

I respectfully dissent from the majority opinion.

A review of the District Court file, and particularly the findings of fact entered by the District Court, fail to disclose that the counterclaim was treated.  The District Court did, in a conclusion of law, deny defendant's counterclaim.  However, this is insufficient.

In defendant's counterclaim, defendant alleges that the vehicle was defective and that defendant incurred damages as the result of being without the service of the vehicle for prolonged periods of time.  Defendant alleges that the defects resulted in continuous repair attempts with resulting cost for replacement vehicles.

In reviewing this record I am unable to determine the basis for the District Court's resolution of this issue. The District Court failed to make any findings of fact with respect to defendant's allegation of defects.

I would remand to the District Court with direction to make specific findings of fact on defendant's counterclaim so that this Court would have an adequate opportunity to review those issues.

Justice