

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-24-1996

# InfoComp Inc v. Electra Prod Inc

Precedential or Non-Precedential:

Docket 96-3039

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"InfoComp Inc v. Electra Prod Inc" (1996). *1996 Decisions.* Paper 16.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/16

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 96-3039


INFOCOMP, INC.,

Appellant

v.

ELECTRA PRODUCTS, INC.; ELECTRA FONT TECHNOLOGIES, INC.;
CHELGRAPH PRODUCTS LIMITED; CHELGRAPH LIMITED;
EDWARD (TED) BARTON; DAVID LEE KING; KEVIN P. MAHONY;
DEREK J. KYTE; ROBERT B. SMITH


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 91-cv-02162)


Argued October 30, 1996

BEFORE:  SCIRICA and COWEN, Circuit Judges and
POLLAK, District Judge*

(Filed December 24, 1996)


Ronald L. Hicks, Jr., Esq.
Frederick J. Francis, Esq. (argued)
Joseph E. Linehan, Esq.
Meyer, Unkovic & Scott
1300 Oliver Building
Pittsburgh, PA  15222

        COUNSEL FOR APPELLANT

G. Daniel Carney, Esq. (argued)
Thorp, Reed & Armstrong
One Riverfront Center
Pittsburgh, PA  15222

        COUNSEL FOR APPELLEES

*Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

OPINION


COWEN, Circuit Judge.

This appeal requires us to determine whether a limitation of damages provision, contained in a proposed, but never accepted, written agreement between a purchaser and a distributor, will preclude the purchaser from seeking damages against the manufacturer of a product sold to the purchaser by the distributor. We conclude that because the proposed agreement between the distributor and the purchaser was never accepted by the distributor, and, therefore, never went into force, the manufacturer is not protected by the limitation of damages provisions. We further hold that since the written agreement never went into effect, the jury's award of damages should not have been based on or limited to the terms contained in the written agreement. Accordingly, we will vacate the judgment of the district court and remand for a new trial on liability and damages.

I.

A.

Appellant, InfoComp ("InfoComp" or "the purchaser"), seeks damages arising from its purchase of an allegedly defective computer imagesetting system manufactured by Appellee, Chelgraph Ltd. ("Chelgraph" or "the manufacturer"). InfoComp purchased the product from a Chelgraph distributor, Electra Products, Inc. ("Electra" or "the distributor"). Chelgraph manufactures various types of advanced printing and compugrahphic equipment. Electra was an independent distributor of Chelgraph products. InfoComp provided graphic design and printing services to clients.

InfoComp periodically purchased equipment to enable the company to take advantage of technological advances in its industry. After considerable research, InfoComp's president and owner, Timothy P. Hornish, informed Kevin P. Mahony, national sales manager for Electra, that InfoComp would purchase the Chelgraph IBX-2000 imagesetting system. Thereafter, Mahony faxed InfoComp pre-printed forms and two letters, which set forth prices, payment schedules and delivery terms. Electra's name, address, and logo appeared on the front of the forms, and the first numbered paragraph defined the term "Electra" as referring only to Electra. Nowhere in the forms was Chelgraph mentioned or even identified. The reverse side of the forms contained the following language:

> This Purchase Agreement shall not be deemed accepted by Electra unless and until an authorized officer or manager of Electra has signed the Purchase Agreement. No other act or writing by an agent, officer, or manager of Electra shall cause this Purchase Agreement to be a valid, effective or binding contract on Electra.

App. at 1836.  Under the heading "Installation and Service," the following limitation of damages provision was also contained in the forms:

> Electra shall not be liable for any special, incidental, resulting, or consequential damages (whether caused by or resulting from Electra's negligence or breach) directly or indirectly arising from the use, inability to use, attempted use, failure to deliver or delay in delivery of, or from a defect in, or a breach by or failure to conform of the Equipment, or any repair or replacement parts thereof, ordered from Electra for use in conjunction therewith, or from any other cause whatsoever.

Id.   The forms also contained an integration clause stating that the proposed written agreement constituted the complete understanding between the parties and that no representations or warranties made elsewhere were of any effect.  Id.

InfoComp signed and returned the forms along with a check for the appropriate down payment in late December of 1989.  Electra cashed the check and two other checks sent in accordance with the faxed letters.  But Electra failed to meet the requirement of the proposed agreement that one of its authorized officers or managers sign the pre-printed form agreements at its home office in order for the agreement to be considered accepted by Electra.

InfoComp contended that the machinery sold to it by Electra failed to perform in all material respects.  Electra made several attempts to repair the equipment after receiving complaints from InfoComp.  InfoComp continued to assert that the machine was not satisfactory.  In the winter of 1990-91 InfoComp advised both Electra and Chelgraph that it was rejecting the machine and requested a full refund.  Both Electra and Chelgraph refused to refund the purchase price.  Chelgraph maintained that it was not responsible for InfoComp's numerous problems because of the limitation of damages clause contained in InfoComp's proposed agreement with Electra.  In addition, Chelgraph maintained that the limitation of damages clause in its own distributor's contract with Electra was enforceable by Chelgraph against InfoComp even though: 1) InfoComp had no knowledge of the Chelgraph-Electra distributor's contract; 2) the Chelgraph-Electra distributor's contract was concluded months after InfoComp signed its agreement with Electra; 3) the proposed InfoComp-Electra agreement made no reference to Chelgraph; and 4) InfoComp had no notice that Chelgraph sought to limit its liability against ultimate purchasers such as InfoComp.

B.

The district court denied InfoComp's motion to preclude evidence concerning the exculpatory and limitation of damages provisions contained in the proposed InfoComp-Electra purchase agreements, which were prepared by Electra.  InfoComp's motion

was based on the principle that the damages provisions——which prohibited recovery for consequential and incidental damages——never came into effect under Pennsylvania law because the agreement expressly stated that it was not to be deemed accepted by Electra unless signed by an official at Electra's home office.  The agreement presented to the district court was unsigned, and Chelgraph was unable to prove that the agreement was signed by an official at the home office of Electra.

The district court found that the limitation of damages provision in the proposed agreement between Electra and InfoComp was not only effective but was also binding on InfoComp in its claims against Chelgraph.  Since many of the claims of InfoComp were within the sweep of the limitation of damages provision, the district court granted Chelgraph's motion for judgment as a matter of law on InfoComp's claims of breach of contract, breach of implied warranties, fraud, and misrepresentation.  The sole claim on which InfoComp was permitted to go forward against Chelgraph was for breach of the written agreement's 90–day warranty provision against defective material, poor workmanship, and nonconformity with the system's written specifications as to functions and processes.  On that claim, the jury returned a verdict in favor of InfoComp.

II.

The district court exercised jurisdiction pursuant to 28 U.S.C. § 1332, diversity of citizenship.  We have appellate jurisdiction under 28 U.S.C. § 1291.  Our review of the district court's interpretation and application of state law is plenary. Coleman v. Kaye, 87 F.3d 1491, 1496 (3d Cir. 1996) (citing Hofkin v. Provident Life & Accident Ins. Co., 81 F.3d 365, 369 (3d Cir. 1996)).  All parties agree that their dispute is governed by Pennsylvania law.

III.

We first address the effect of the InfoComp–Electra purchase agreement.  In Franklin Interiors v. Wall of Fame Management Company, 510 Pa. 597, 601, 511 A.2d 761, 763 (1986), the parties' agreement stated that "[t]he document does not become a contract until approved by an officer of Franklin Interiors."  The Pennsylvania Supreme Court held that this sentence, "inserted in this document by the Appellee, clearly and unambiguously required [the Appellee] to execute the document," and noted that "it is hornbook law" that a written agreement will have no effect "until accepted in the mode and manner expressly provided by the terms of the offer."  Id. at 600–601, 511 A.2d at 762–763.  The court explained that this holds true "even though the subsequent performance by the parties may give rise to a binding contract between them."  Id. at 600, 511 A.2d at 762.

In his multi–volume treatise on the Uniform Commercial Code (UCC), Ronald Anderson explains that "[a] seller can validly specify that no contract arises until the acceptance made by the seller is approved by the seller's home office."  2 Ronald A. Anderson, Anderson on the Uniform Commercial Code § 2–206:27 (3d ed. 1982) (citing West Penn Power Co. v. Bethlehem Steel Corp., 236 Pa. Super. 413, 348 A.2d 144 (1975)).  Such is precisely the

fact pattern before us.  As Franklin Interiors indicates, when an offeror fails to comply with its own conditions precedent to contract formation, that party may not claim the benefits of the proposed contract (including any limitations on damages and remedies).

This principle, which remains the unchallenged law of Pennsylvania, was first developed in West Penn Power and Franklin Interiors and later strictly applied in Cucchi v. Rollins Protective Services Company, 377 Pa. Super. 9, 546 A. 2d 1131 (1988).  In Cucchi, a lessor was barred from asserting a limitation on liability provision in a contract because that contract had not been signed by a representative of its home office.  Although the contract in Cucchi had been signed by a branch office representative, the court construed the agreement strictly and found the lack of a home office signature to be dispositive.  Id. at 13, 18-19.  Here, the proposed contract also recited that a home office signature was essential to contract formation.  There is no evidence that any Electra employee ever signed the written agreement, let alone an employee at the home office.  The law of Pennsylvania firmly establishes that the absence of the required signature is prima facie proof that the contract is not effective:

> The Appellee, through its officers, never entered its signature on the document to evidence approval as required by its terms.  This is clearly a facial defect. . . .  [T]here is no evidence in this record to sustain the facially defective contract, and Superior Court clearly erred in considering any information [outside] the record to correct that defect.

Franklin Interiors, 510 Pa. at 600-601, 511 A.2d at 762-763.

The court in Cucchi explained that "a written instrument must be strictly construed against its maker.  . . .  Since the [lessor] had failed to follow its own conditions of acceptance, [it] could not rely on the [limitation on liability provision]."  377 Pa. Super. at 18, 546 A.2d at 1135 (citation omitted).  That court noted, as do we, that

> although it ha[s] always been the law that only the party against whom a warrant is intended to bind must sign it because the law assumes assent of the person in whose favor it is drawn, the law [i]s of no avail to the appellee.  No assumption [can] be made that the appellee assented to the warrant because it expressly conditioned acceptance of all the contract terms upon its execution of the document.

Id. at 18-19, 546 A.2d at 1136 (citing Franklin Interiors).  This principle is so firmly embedded in Pennsylvania jurisprudence that the Cucchi court stated, "the fact that both parties may have initially believed the written contract to be binding upon themselves did not make it so [because its express terms were not met]." Id. at 17, 546 A.2d at 1135.

In the matter now before us, because the written agreement was never in effect between Electra and InfoComp, a

fortiori Chelgraph (a non-party to the proposed agreement) cannot find protection in the limitation of damages provision contained in that proposed agreement. A contract has been formed between InfoComp and Electra in this case by reason of their performance. The terms of that contract, however, are governed by the provisions of the UCC as adopted in Pennsylvania, not the proposed written agreement that was never accepted by Electra. The UCC explicitly provides that incidental and consequential damages are available to purchasers in appropriate cases. 13 Pa. C.S.A. §§ 2714, 2715.

IV.

The contract that exists between the parties arises from the UCC and Pennsylvania general contracts law, not the terms of the proposed written agreement. It follows that just as the proposed agreement does not provide Chelgraph and Electra with protection against the measure or amount of damages, it cannot determine the legal grounds and terms of liability upon which InfoComp may recover against Electra and Chelgraph. For this reason, the following passage in the written agreement, as well as all other terms, is of no effect:

> This Agreement embodies the full and complete understanding between the parties, and no modification or waiver of any terms or conditions hereof, nor any representations or warranties shall be of any force or effect unless in writing and signed by an authorized officer or manager of Electra.

App. at 1836. Erroneously believing the proposed written agreement to be in effect, the district court instructed the jury that

> you may only look to the written purchase agreement to determine whether a warranty existed, whether the Chelgraph defendants breached the warranty, and whether the breach of warranty was a substantial factor in causing the harm to the plaintiff.

App. at 1642. The district court explained to jurors that although InfoComp allegedly received "certain oral representations [and] representations in written advertisements, promotional materials, and samples issued by Electra and Chelgraph that the IBX-2000 had certain characteristics," the jury could not consider any of the evidence external to the agreement in assessing liability. Id.

Since the proposed written agreement is not in force, the jury should have been advised that it was free to consider all representations that were made to InfoComp by Electra and Chelgraph, not merely those contained in the written agreement. While the proposed written agreement may be evidence of the parties' intent and actions, it never went into effect as a binding contract. Accordingly, it cannot be the sole legal basis for InfoComp's recovery against Chelgraph.

InfoComp has appealed for a new trial solely on the issue of damages. A retrial limited to damages would be

inappropriate under the facts of this case.  See, e.g., Williams v. Rene, 72 F.3d 1096 (3d Cir. 1995)(intertwined nature of liability and damages requires new trial on all issues); Kirk v. Raymark Industries, Inc., 61 F.3d 147 (3d Cir. 1995)(magnitude of trial error demands new trial on liability and damages); Advanced Medical, Inc., v. Arden Medical Systems, Inc., 955 F.2d 188 (3d Cir. 1992)(erroneous interpretation as to admissibility of evidence necessitates retrial on both liability and damages).

The district court inaccurately instructed the jury that the liability of Chelgraph should be determined under the written contract. The jury instructions improperly constrained not only the type of damages awarded, but the range of evidence the jury could consider in determining what representations had been made to InfoComp.  For this reason, when the case returns to the district court, the jury must be free to consider the matter of both liability and damages, without any limitation on either party by reason of the proposed written agreement.

V.

Chelgraph has argued that the proposed InfoComp–Electra limitation of damages provisions should inure to the benefit of Chelgraph.  In King v. Hilton–Davis, 855 F.2d 1047, 1053 (3d Cir. 1988), we explained that under Pennsylvania law the liability of manufacturers will not be waived by remote purchasers unless the disclaimer is "clearly communicated to the remote [purchaser] prior to his or her purchase."  Communication of the limitation clause from the manufacturer to the remote purchaser is vital; without more, a limitation clause addressing only the distributor and the purchaser has no effect on the manufacturer.  See id.King offers two examples of methods manufacturers may employ to notify remote purchasers of their desire to limit liability: (1) displaying a conspicuous provision in the literature included with the product, and (2) contracting with the distributor to expressly reference manufacturer's limitation of liability in the distributor's contracts with its customers.  Id. at 1054 (citations omitted).  King is the most recent statement of Pennsylvania law in this area, and Chelgraph failed to employ any method to satisfy King's holding that remote purchasers must be specifically notified of a manufacturer's intent to limit damages if that limitation is to be effective.

The facts of the present case represent an a fortiorimatter from King:  Even if Chelgraph had endeavored to limit its liability by or through the proposed agreement between Electra and InfoComp, that written contract never came into existence. The proposed written agreement was never accepted according to its own explicit terms.  As a result, the sale that went forward between Electra and InfoComp was the product of an unwritten agreement subject to the full range of provisions contained in the UCC.

VI.

For the reasons set forth above, the judgment of December 21, 1995, will be vacated.  We will remand this matter to the district court for trial on both liability and damages consistent with this opinion.  Such trial shall be without limitation on damages by reason of the proposed written agreement

between Electra and InfoComp.
            Costs taxed against Appellee.